ENTERED
CLERK, U.S. DISTRICT COURT

APR 2 8 2000

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ✓
Send ✓
Clsd
Enter ✓
JS-5/JS-6 ✓
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

APR 2 6 2000

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MICHAEL S. GILBERT, an
individual,

                    Plaintiff,

        v.

STEPHEN'S COFFEE COMPANY,
INC., a California
corporation; et al.,

                    Defendants.

Case No. CV 99-11479 DDP (RZx)

[Motion filed on 3/29/00]

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER FOR IMPROPER VENUE**

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

     This matter comes before the Court on the defendants' motions to dismiss for improper venue pursuant to 28 U.S.C. § 1406, or, alternatively, to transfer for convenience pursuant to 28 U.S.C. § 1404. After reviewing and considering the oral argument and materials submitted by the parties, the Court concludes that venue in the Central District of California is improper and transfers the case to the Southern District of California.

Docketed
Copies / NTC Sent ce usDc-sd
JS - 5 / JS - 6
JS - 2 / JS - 3
CLSD
                    APR 2 8 2000

ENTERED ON ICMS

APR 2 8 2000

CV

43

## I. Background

### A. The Parties

Plaintiff Michael Gilbert is an individual residing in New Jersey. The plaintiff was employed as a marketing consultant by defendants in August of 1997.

Defendants Stephen's Coffee Company and Stephen's Coffee Holding Corporation (collectively, "Stephen's Coffee") are a company that produces coffee products with its principal office located in San Diego, California. Defendant Stephen Corey is the founder of Stephen's Coffee. Defendant Corey later sold his company to defendant North West Farms, Inc., which was a predecessor in interest to defendant La Jolla Coffee Company. In November of 1999, these four companies were merged with an existing publicly traded company: Defendant La Jolla Fresh Squeezed Coffee Co., Inc. (hereinafter, "Stephen's Coffee Defendants").

Defendant Entrepreneur Investments, LLC, is an investment company with its principal offices located in Littleton, Colorado, and branch offices located in San Diego. Defendant James Watson resides in Jefferson County, Colorado and is the operating manager of Entrepreneur Investments. Defendant Gregory Writer, Jr., is an officer of Entrepreneur Investments residing in San Diego (hereinafter, "Entrepreneur Defendants").

### B. Facts Relevant to Motion

In late July or early August of 1997, the plaintiff met with defendants Corey, Watson and Writer at a restaurant in Los Angeles to discuss the plaintiff's involvement with Stephen's Coffee. The plaintiff was asked to assist Stephen's Coffee in marketing its

2

coffee products with the intention of eventually taking the company public.  (1st A. Compl. ¶ 16.)  At the meeting, the plaintiff alleges that the parties entered into an oral agreement that he would act as marketing consultant for Stephen's Coffee in return for a 15% ownership interest in Stephen's Coffee, 100,000 shares of common stock of the holding corporation, and a fee of $25,000. (See id. at ¶ 17.)

In August of 1998, defendant Corey informed the plaintiff that he had sold the company to associates of defendant Writer.  The plaintiff had not yet received stock certificates representing the 15% ownership interest in Stephen's Coffee, the 100,000 shares in the holding corporation, and $15,000 of the fee amount.  (See id. at ¶ 20.)  On December 3, 1998, the plaintiff received a promissory note and a settlement agreement providing for the eventual payment of the remainder of the fee and the issuance of 150,000 shares of defendant North West Farms, Inc.  (See id. at ¶ 24.)  The plaintiff did not sign the settlement agreement.

In August of 1999, the plaintiff received a stock certificate for 150,000 shares of defendant La Jolla Fresh Squeezed Coffee.  In November of 1999, Stephen's Coffee, the holding corporation, North West Farms and La Jolla Coffee Company were merged into La Jolla Fresh Squeezed Coffee Co., Inc., a publicly traded company.

The plaintiff filed his First Amended Complaint on February 8, 2000, alleging breach of contract, and seeking specific performance and the setting aside of the alleged fraudulent merger.  The Stephen's Coffee Defendants filed a motion to transfer for improper venue, or, alternatively, to transfer for convenience pursuant to 28 U.S.C. §§ 1404 and 1406, on March 29, 2000.  The Entrepreneur

1  Defendants filed a similar motion on March 31, 2000.  The plaintiff
2  filed an opposition to the motion on April 10, 2000.  The
3  defendants filed reply briefs on April 17, 2000.

4

5  **II.  Defendants' Motion to Dismiss or Transfer for Lack of Venue**
6      **A.  Legal Standard**
7      In a diversity case, venue is proper in a judicial district in
8  which (1) any defendant resides, (2) "a substantial part of the
9  events or omissions giving rise to the claim occurred," or (3) the
10 defendants are subject to personal jurisdiction, if there is no
11 district in which the action may be brought.  28 U.S.C. § 1391(a).
12 If a state has more than one judicial district, a defendant
13 corporation is deemed to reside in any district "within which its
14 contacts would be sufficient to subject it to personal jurisdiction
15 if that district were a separate State."  28 U.S.C. § 1391(c).

16     If venue is improper, the court must either dismiss or, in the
17 interest of justice, transfer the case to a district having proper
18 venue.  See 28 U.S.C. § 1406(a).  Although there is some
19 disagreement, most courts have held that the plaintiff bears the
20 burden of establishing proper venue.  See Schwarzer et al., Federal
21 Civil Procedure Before Trial, ¶ 4:251 at 4-69 (arguing that placing
22 the burden on the plaintiff is the better view).  A prima facie
23 showing of proper venue is sufficient to defeat a motion to
24 dismiss.  See id. at ¶ 9:139.1 at 9-36.

25

26     **B.  Substantial Part of the Events**
27     The issue before the Court is whether "a substantial part of
28 the events or omissions giving rise to the claim" occurred in Los

4

1 Angeles, i.e., within the Central District of California. 28
2 U.S.C. § 1391(a)(2).

3     The plaintiff argues that either the contract was entered into
4 in Los Angeles at the dinner meeting in July or August of 1997, or
5 that the parties intended that the contract be performed in Los
6 Angeles. In either case, the plaintiff argues that venue is proper
7 in this Court.

8     The Stephen's Coffee Defendants argue that the plaintiff has
9 not satisfied the burden required to establish proper venue in the
10 Central District.[1]

11     Furthermore, the plaintiff does not appear to base his
12 assertion of venue on the four claims related to the 1999 merger.
13 The Stephen's Coffee Defendants allege that none of the events
14 related to the merger took place in the Central District. The
15 defendants claim that the principal place of business of all the
16 companies involved in the merger is San Diego. Additionally they
17 claim that all records, business meetings, and all stock issued in
18 connection with the merger are located or took place in San Diego.

19     Accordingly, the Court will only address the assertions of
20 venue that arise out of the plaintiff's two claims related to the
21 marketing contract entered into in July or August of 1997.

22

23     **1. Location of entry into contract**

24     The plaintiff argues that at the dinner meeting with
25 defendants Corey, Watson and Writer, an oral agreement was reached

26

27     [1] The Entrepreneur Defendants have incorporated by reference
28 the arguments contained in the Stephen's Coffee Defendants' motion
and reply. (See Mot. at 4.)

1   which required no further negotiations.  (See Opp. at 5.)  As such,

2   the plaintiff asserts that entering into a contract was a

3   substantial event sufficient to prove proper venue.

4          The Stephen's Coffee Defendants argue that the dinner meeting

5   in Los Angeles does not meet the requirement as a substantial part

6   of the events.  (See Mot. at 3.)  Defendants cite PI, Inc. v.

7   Quality Prods., Inc., 907 F. Supp. 752 (S.D.N.Y. 1995), in support

8   of the proposition.  In PI, the plaintiff brought an action in the

9   district court in New York claiming breach of a contract that was

10  drafted, executed, performed and breached in Florida.  See id. at

11  758.  The court ruled that discussions which were held at a meeting

12  in New York lacked "the substantial nexus to the plaintiff's breach

13  of contract claim that § 1391(a)(2) demands."  Id.

14         The plaintiff attempts to distinguish PI from the present case

15  by arguing that the oral agreement reached at the dinner meeting

16  was the final agreement because no further negotiations were

17  required.  The plaintiff states that the letter was not a condition

18  to the effectiveness of the contract.  (See Opp. at 5.)  The

19  Stephen's Coffee Defendants maintain, however, that a binding

20  agreement was not reached until after the meeting.

21         It appears to the Court that precisely how and when the

22  parties entered into the contract in the summer of 1997 is unclear.

23  Both the plaintiff and the defendants have offered declarations

24  which propose contrary interpretations.  Neither party has

25  submitted a copy of the letter allegedly drafted in San Diego and

26  sent to Gilbert in New Jersey.  The burden of proving proper venue,

27  however, rests with the plaintiff.  Therefore, the Court finds that

28  the plaintiff has not established that the dinner meeting and

6

1 | negotiations in Los Angeles constitute a "substantial event"

2 | sufficient to prove proper venue under § 1391.

3

4 | **2.    Location of performance of the contract**

5 | The Ninth Circuit has ruled that where a contract is intended

6 | to be performed is the preferable venue location.  See <u>Decker Coal</u>

7 | <u>Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 842 (9th Cir. 1986).

8 | In <u>Decker</u>, the plaintiff's principal place of business was Montana

9 | and the contract was to be performed there.  <u>See id.</u>  The defendant

10 | argued that the event giving rise to the claim was the transmittal

11 | of notice enforcing the force majeure provision.  <u>See id.</u>  With

12 | regard to the determination of proper venue, the Ninth Circuit

13 | stated:

14 | The overriding purpose of § 1391(a) is to further the

15 | convenience of the parties.  We believe that the spirit of §

16 | 1391(a) is better served in this case if venue for a claim

17 | based on breach of contract be the place of intended

18 | performance rather than the place of repudiation.  We favor

19 | this rule because the place of performance is determined at

20 | the inception of the contract and therefore parties can

21 | anticipate where they may be sued.  Furthermore, the place of

22 | performance is likely to have a close nexus to the underlying

23 | events.

24 | <u>Id.</u> (citations omitted).  Accordingly, the Court will address the

25 | parties' intentions with regard to the desired location of

26 | performance of the contract.

27 | The plaintiff argues that the parties intended for the

28 | marketing contract to be performed in Los Angeles.  (<u>See</u> Opp. at

7

1  5.)  The plaintiff states that a "large portion" of his marketing
2  services were to be provided in Los Angeles and that he was to
3  provide a "substantial presence" on behalf of the company in Los
4  Angeles.  (Gilbert Decl., ¶ 11.)  The plaintiff asserts that his
5  performance of the contract in Los Angeles would be a sufficiently
6  substantial event to establish proper venue.

7      The defendants argue, however, that performance of the
8  contract was limited to two geographical areas apart from San
9  Diego, which was the location of several meetings.  First, the
10  defendants allege that they intended to market their product in
11  conjunction with other products that the plaintiff was already
12  selling in Russia.  (See Corey Supp. Decl., ¶ 12.)  Secondly, the
13  defendants allege that they sought performance in a Shop-Rite
14  venture in New York.  (See id.)

15      Despite his claims of intended performance in Los Angeles, the
16  plaintiff has failed to name any clients with whom he was to work,
17  any meetings or sales calls, or marketing opportunities of any kind
18  that were to be pursued in Los Angeles.  The plaintiff's reliance
19  on Bates v. C & S Adjusters, Inc., 980 F.2d 865 (2d Cir. 1992), in
20  this regard is misplaced.  In that case, the court noted that the
21  standard for venue focuses on "the location where events occurred."
22  Id. at 868.  As noted above, the plaintiff has not pointed to any
23  events that occurred in Los Angeles in the course of the
24  performance of the contract.

25      Once again, the plaintiff has offered one interpretation of
26  the nature of the performance of the contract while the defendants
27  have offered a different interpretation.  According to the
28  plaintiff, he was to work in Los Angeles.  According to the

1 | defendants, however, the plaintiff was to work between meetings in
2 | San Diego and the ventures in Russia and New York.

3 | Therefore, the Court finds that the plaintiff has failed to
4 | meet the burden required to prove proper venue based on performance
5 | of the contract.  The plaintiff does not appear to have met his
6 | burden of proving that a substantial part of the events or
7 | omissions giving rise to the claim took place in the Central
8 | District of California.  For this reason, the Court finds that
9 | venue in the Central District is improper.

10

11 | **C.   Dismissal vs. Transfer**

12 | Normally, if there exists a district where an action could
13 | have been brought, transfer is preferred to the harsh remedy of
14 | dismissal.  See Schwarzer et al., supra, ¶ 4:205 at 4-58.  Section
15 | 1406(a) requires however that an action be transferred only "if it
16 | be in the interest of justice."  28 U.S.C. § 1406(a).  Transferring
17 | an action is typically "in the interest of justice because normally
18 | dismissal of an action that could be brought elsewhere is 'time-
19 | consuming and justice-defeating.'"  Miller v. Hambrick, 905 F.2d
20 | 259, 262 (9th Cir. 1990) (addressing transfer under 28 U.S.C. §
21 | 1631) (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)
22 | (granting transfer under § 1406 to avoid barring of subsequent
23 | action due to statute of limitations)).

24 | The parties in the present case have urged the Court to
25 | transfer the case to the Southern District of California in lieu of
26 | dismissal.  Furthermore, at oral argument, the parties indicated
27 | that should the Court find venue to be improper in the Central

28

9

1  District, they would accept an order to transfer the case to the
2  Southern District.

3

4  **III. Conclusion**

5      Therefore, for the foregoing reasons, the Court concludes that
6  venue in the Central District of California is improper under 28
7  U.S.C. § 1406.  Accordingly, the case shall be transferred in its
8  entirety to the United States District Court for the Southern
9  District of California in San Diego.

10

11  IT IS SO ORDERED.

12

13

14  Dated: _4-26-00_

15                                         DEAN D. PREGERSON
                                           United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28